■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELISSA S. ENGELHARDT, Appellant. [941 NYS2d 808]—

Kavanagh, J. Appeal from a judgment of the County Court of

Chemung County (Buckley, J.), rendered December 6, 2010, convicting defendant following a nonjury trial of the crime of manslaughter in the first degree.

In November 2009, police responded to defendant's residence after it was reported that her 21-month-old stepson was found dead in his playpen. Defendant initially told police that when the infant arrived at her home on the day prior to his death, he was tired and had no appetite, but nothing unusual had occurred and it appeared to her that his death was the result of natural causes. Later, it was determined that the child's death was, in fact, caused by methanol poisoning and that traces of methanol were found on his drinking cup. During the ensuing investigation, police, with defendant's consent, took a computer from her home, conducted a forensic examination on its hard drive and determined that an Internet search on poisoning had been performed on the computer shortly before the child's death. When the police again contacted defendant, she refused to submit to any additional questioning about the child's death and stated that her mother had told her that she was represented by Legal Aid.

The next day, defendant telephoned the detective in charge of the investigation, stated that she was, in fact, not represented by counsel and was willing to go to police headquarters to answer additional questions concerning her stepson's death. At police headquarters, defendant was advised of her *Miranda* rights, waived them and, during the interview that followed, ultimately admitted to police that she had laced her stepson's apple juice with windshield washer fluid shortly before he drank it on the night prior to his death. Based on this admission and other evidence developed by the police during their investigation, defendant was arrested and was later charged by indictment with murder in the second degree and manslaughter in the first degree.

After defendant's motion to suppress was denied, County Court, in a nonjury trial, acquitted her of murder, but found her guilty of manslaughter in the first degree. Defendant was subsequently sentenced to 20 years in prison and five years of postrelease supervision. She now appeals, arguing that it was error not to suppress the statements she made to the police and that her sentence was harsh and excessive.

Defendant initially argues that County Court erred in denying her motion to suppress because, when she made her statement regarding the windshield washer fluid, she was in police custody and had exercised her right to counsel. The "right to counsel indelibly attaches when an uncharged individual . . . ,

*while in custody*, has requested a lawyer in that matter" (*People v Dashnaw*, 85 AD3d 1389, 1390 [2011], *lv denied* 17 NY3d 815 [2011] [internal quotation marks and citations omitted]; *see People v Lopez*, 16 NY3d 375, 380 [2011]). The threshold question that first must be answered is whether defendant was in police custody when she made the statements she sought to suppress. An individual's custodial status is dependent upon a number of factors, but the inquiry essentially distills to whether a reasonable person in the defendant's position, "innocent of any crime, would have felt free to leave" police headquarters at the time he or she was being questioned (*People v Harris*, 48 NY2d 208, 215 [1979]; *see People v Paulman*, 5 NY3d 122, 129 [2005]; *People v McCoy*, 89 AD3d 1218, 1219 [2011]; *People v Rhodes*, 83 AD3d 1287, 1288 [2011]).

Here, defendant acknowledges that she was not represented by counsel when she arrived at police headquarters and admits telling the police that she "wanted to come down and talk" about the circumstances surrounding her stepson's death. She went to police headquarters voluntarily and, while there, was not restrained or restricted in any way prior to telling the police that she put windshield washer fluid in her stepson's drinking cup. In addition, prior to being questioned, defendant was again advised of her *Miranda* rights, waived them and only then was interviewed concerning the circumstances surrounding her stepson's death. Also, while being questioned, defendant was allowed to leave the interview room to speak with her mother, who had accompanied her to police headquarters, and later left police headquarters with her mother to get something to eat. Only after the two women were gone for some 40 minutes did they return and, once again, prior to being questioned, defendant was advised of her *Miranda* rights and agreed to waive them. It was at that point in the interview that defendant ultimately admitted placing an ounce of windshield washer fluid in her stepson's drinking cup. Based on these facts, we agree with County Court that defendant was not in police custody at the time she made this statement and her motion to suppress was properly denied (*see People v Davis*, 75 NY2d 517, 523 [1990]; *People v Casey*, 37 AD3d 1113, 1115 [2007], *lv denied* 8 NY3d 983 [2007]; *People v Strong*, 27 AD3d 1010, 1012 [2006], *lv denied* 7 NY3d 763 [2006]).

Moreover, even if defendant were in custody, her right to counsel would not have attached unless and until she stated unequivocally to the police that she was represented by counsel or asked that she be provided with legal representation before answering any further questions regarding her stepson's death

(*see People v Glover*, 87 NY2d 838, 839 [1995]). In that regard, defendant claims that she made such a request when she stated while being questioned, "I don't want you to be mad at me, but I'm thinking about calling a lawyer." However, the fact that she told the police that she was contemplating contacting a lawyer is not tantamount to declaring that she had a lawyer or wanted one to represent her. Such a statement does not constitute an unequivocal assertion of her right to counsel and did not serve to invoke that right while she was being questioned by the police (*see People v Davis*, 193 AD2d 1142 [1993]; *People v Hart*, 191 AD2d 991, 992 [1993], *lv denied* 81 NY2d 1014 [1993]; *People v Lattanzio*, 156 AD2d 757, 759-760 [1989], *lv denied* 76 NY2d 860 [1990]).

Finally, defendant's sentence was not harsh or excessive. As County Court appropriately noted, its decision to impose a substantial prison sentence, which was less than the maximum, was based primarily on the fact that defendant was criminally responsible for the death of a 21-month-old child who had been entrusted to her care. In our view, extraordinary circumstances do not exist that would warrant that the sentence be reduced (*see People v Hartman*, 86 AD3d 711, 713 [2011], *lv denied* 18 NY3d 859 [2011]; *People v Flint*, 66 AD3d 1245, 1246 [2009]).

Spain, J.P., Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.